United States District Court
DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>  *v.*<br><br>WILLIAM C. GARDNER, DDS,<br><br>    *Defendant*. | No. 1:22-cv-00830-JB-JFR |

**UNITED STATES' MOTION FOR DISCOVERY SANCTIONS
AND TO CONTINUE DEFENDANT'S DEPOSITION**

Because defendant Dr. William Gardner "impede[d], delay[ed, and] frustrate[d]" the United States' "fair examination" of him during his October 13, 2023 deposition, the United States respectfully requests discovery sanctions under Federal Rule of Civil Procedure 30(d)(2) and an order compelling Dr. Gardner to appear for a continued deposition at the federal courthouse, at his expense, prepared to testify truthfully, as detailed below.

*Background*

**1.** This Court is familiar with Dr. Gardner and his history of "practicing dentistry without a license" in New Mexico. *Gardner v. Schumacher*, 547 F. Supp. 3d 995, 1009 (D.N.M. 2021) (Browning, J.).

**2.** To summarize: After finding that Dr. Gardner falsified diagnostic information to obtain benefit payments, the New Mexico Board of Dental Healthcare "issued a decision" in November 2020 "revoking Dr. Gardner's license to practice dentistry, effective January 1, 2020." *Id.* at 1006. Dr. Gardner challenged the Board's decision in state court and obtained a stay, but the state

— 1 —

court ultimately "entered an order" "lifting the stay" and "permitting the Dental Board to enforce" its revocation decision, effective July 2020. *Id.* at 1012.

**3.** Dr. Gardner has raised numerous challenges to his license's revocation in state and federal court, but none has succeeded. *E.g.*, *id.* at 1011–13, 1054, 1056 (denying Dr. Gardner injunctive relief on his due-process claims against Board members and concluding that Dr. Gardner "admits that his license has already been revoked"); *Gardner v. Schumacher*, No. 1-23-cv-189-MIS-DLM, 2023 WL 5352452, at *1 (D.N.M. Aug. 21, 2023) (dismissing as untimely another federal lawsuit that Dr. Gardner filed against Board members); *Gardner v. N.M. Bd. of Dental Health Care*, No. A-1-CA-38981, 2022 WL 2252237, at *1–3 (N.M. Ct. App. June 22, 2022) (rejecting Dr. Gardner's arguments and noting his "chronic noncompliance" with procedural rules); *William Gardner, D.D.S., P.A. v. N.M. Bd. of Dental Healthcare*, No. A-1-CA-39720, 2022 WL 1978657, at *1–4 (N.M. Ct. App. June 6, 2022) (describing Dr. Gardner's "proliferation of appellate proceedings" and rejecting his "repetitious arguments," which the court found "strain[ed] credulity"), *cert. denied* (N.M., Aug. 10, 2022).

**4.** Nonetheless, Dr. Gardner continued to practice dentistry without a license in New Mexico. He faces criminal charges in state court for doing so. *E.g.*, Doc. 23-1 (indictment). He also faces the present federal proceedings seeking civil penalties and damages. *See* Doc. 1. Specifically, the United States alleges that, even though his license was revoked, Dr. Gardner continued to write controlled-substances prescriptions for dozens of his patients in 2020 and 2021

and thereby caused the submission of numerous false claims to federal health care programs, violating both the Controlled Substances Act (CSA) and false Claims Act (FCA). *See id.*

**5.**  Dr. Gardner's defense strategy in this case has become clear: Delay. For example, he delayed 297 days after he was indicted, and 285 days after this civil lawsuit was filed, to seek a stay of this case. Doc. 26 at 1 (opposition to Dr. Gardner's stay motion). He has delayed months in verifying (and has still not verified) his July 2023 interrogatory responses, as Rule 33(b)(5) requires, despite repeated requests that he do so. *Id.* at 3. And he delayed months in agreeing to sit for a deposition, despite repeated good-faith requests that he do so under Local Rule 30.1 dating back to June 2023. Doc. 29 ¶ 2.

**6.**  After the United States notified Dr. Gardner in September 2023 of its intent to notice his deposition for a date in October without his input, Dr. Gardner finally agreed to sit for a deposition on October 13, the discovery deadline. (Note that the United States has moved to extend the discovery deadline by 60 days given Dr. Gardner's conduct. Doc. 29.)

**7.**  Accordingly, on September 11, the United States noticed Dr. Gardner's deposition for October 13 at 9:00 a.m., to take place in person at the U.S. Attorney's Office in Albuquerque. *See* Ex. A (email attaching deposition notice).

**8.**  Dr. Gardner did not object to the September 11 deposition notice or file a motion for a protective order.

**9.**  Dr. Gardner's efforts to delay this case, however, continued during his

October 13 deposition. To start, he showed up late. *See* Ex. B (cover page of deposition transcript noting that deposition began at "9:19 a.m.").

10. Then, after he was sworn in, Dr. Gardner testified that he took "pain medication and a muscle relaxer" "this morning" for his "back," based on "police brutality"; that he "[did]n't know if" these medications would affect his "ability to testify truthfully today"; and that these medications might affect his cognitive state "because they're pain medication." *Id.* at 7.

11. When asked for clarification, Dr. Gardner testified that he "d[id] not know the name of" the medication; that it was required "prescription" medication at the "[h]ighest dosage you can get"; and that he might be taking this medication "perpetually" "[u]ntil [his] back gets better." *Id.* at 38–47.

12. Dr. Gardner's counsel suggested that Dr. Gardner would "agree to come back on a continued deposition at a time when [he's] not taking those prescriptions," despite his client's testimony that he will be on these medications "probably perpetually." *Id.* at 41–42.

13. Even though the deposition notice was served on September 11 — 32 days before the deposition — Dr. Gardner did not notify the United States or the Court beforehand that he was taking these prescriptions or ask to postpone the deposition on that basis.

14. Faced with a witness (1) unable or unwilling to confirm that he was able to testify truthfully and accurately and (2) seeking to delay his deposition until a date unknown within only his control, the United States adjourned the

deposition to seek relief from the Court. *Id.* at 47.

## *Argument*

15. Dr. Gardner should be sanctioned for his conduct under Rule 30(d)(2), which empowers the Court to "impose an appropriate sanction — including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes, delays, or frustrates the fair examination of the deponent."

16. The Rule covers deponents and applies to conduct before and during the deposition. *E.g.*, *Stocks v. Aurora*, No. 13-cv-1141-RBJ-CBS, 2016 WL 9735866, at *4 (D. Colo. May 17, 2016) ("The authority to impose sanctions under Rule 30(d)(2) logically extends to those occasions where the deponent is the individual who is impeding, delaying or frustrating the deposition examination"); *OsteoStrong Franchising, LLC v. Richter*, No. 18-cv-1184-KWR-JFR, 2020 WL 3448225, at *4 (D.N.M. Jan. 30, 2020) ("To the extent Plaintiff argues that sanctions under [R]ule 30(d)(2) are limited to obstructive behavior during a deposition, the Court disagrees and notes that several courts have sanctioned a party for behavior that thwarted the setting or commencement of a deposition, rather than conduct occurring during a deposition").

17. Dr. Gardner impeded, delayed, and frustrated his "fair examination" under Rule 30(d)(2), as detailed below.

18. The deposition was, first, proper despite Dr. Gardner's invocation of his Fifth Amendment privileges, and regardless, Dr. Gardner did not seek a protective order based on this privilege and so waived any argument otherwise.

*E.g., Roach v. NTSB*, 804 F.2d 1147, 1151 (10th Cir. 1986) ("[A] witness must normally take the stand, be sworn to testify, and assert the [Fifth Amendment] privilege in response to each allegedly incriminating question as it is asked," because the "court, not the witness, must determine whether [the witness] is entitled to prevail on the privilege").

**19.** Moreover, Dr. Gardner showed up (late) for his October 13 deposition under the influence of medications and could not, or would not, verify whether those medications affected his ability to testify truthfully and accurately. Thus, "although [Dr. Gardner] appeared at his … deposition, he rendered it a meaningless exercise by stating that his medication rendered him incapacitated." *Tsimbidaros v. Int'l Bhd. of Painters & Allied Trades*, 1996 WL 346629, at *1–2 (2d Cir. 1996) (affirming sanctions where the deponent "testified that he was under the influence of certain medication, and consequently would not be bound by his testimony").

**20.** Dr. Gardner could have avoided this issue by notifying the United States or the Court about these medications before October 13 and seeking to postpone his deposition on that ground, and he had ample time to do so — indeed, the deposition was noticed 32 days before it took place. *See* Ex. A. Instead, however, Dr. Gardner said nothing, and the United States accordingly spent time, energy, and resources to prepare for and proceed with his deposition on October 13. Given his conduct, Dr. Gardner — not the taxpayers — should bear the costs of the October 13 deposition and this motion, along with

the costs of continuing his deposition.

21. Specifically, the United States requests that the Court compel Dr. Gardner to appear for a continued deposition under Rule 30(d)(2), and he should be ordered to promptly provide the United States with dates when he will be available and prepared to testify under oath, truthfully and accurately, and not under the influence of medications.

22. Dr. Gardner should also be ordered to pay reasonable expenses associated with both his October 13 deposition and this motion — $966.20 for the court reporter's appearance fee and the expedited transcript attached to this motion — and he should also be ordered to pay reasonable expenses associated with his continued deposition, including court-reporter fees. *See* Ex C at 1 ($966.20 court-reporter invoice for October 13 deposition); *see, e.g.*, *C.H. v. Howard*, No. 20-cv-190-SMV-GBW, 2022 WL 1909414, at *9 (D.N.M. June 3, 2022) ("[The sanctioned party] will be required to pay the reasonable costs of the continued deposition" under Rule 30(d)(2)).

23. The Court should also order the continuation of Dr. Gardner's deposition to occur in person at the federal courthouse in Albuquerque and that the deposition must be videotaped at his expense. Indeed, Dr. Gardner engaged in other misconduct during the October 13 deposition that warrants this result. Dr. Gardner, for example, suggested that his deposition in this civil case is not part of "court proceedings" in explaining why he did not bring his nonprescription reading glasses to the deposition to read exhibits. Ex. B at 29–30, 46

("There's no court proceedings"). Dr. Gardner also outright refused to answer questions and answered falsely to others. Specifically, because Dr. Gardner's "ability to pay" civil penalties is relevant under the CSA, the United States sought to ask Dr. Gardner about, among other things, joint assets with his spouse, if any. *United States v. Glob. Distribs.*, 498 F.3d 613, 620 (7th Cir. 2007). Yet when the United States asked Dr. Gardner, "What's your wife's name?," Dr. Gardner refused to answer, stating, "I'm not going to tell you my wife's name" and "I won't have … my wife involved in any of this." Ex. B at 9. Later, when the United States asked Dr. Gardner, "Is your wife's name Katherine?," Dr. Gardner answered falsely by saying, "I don't know," and confirmed his refusal to answer by saying, "I'm not going to say my wife's name." *Id.* at 10. This conduct violates Rule 30 and disrespects the Court's authority, and holding the deposition at the courthouse will demonstrate that this is a serious matter in federal court with serious consequences for "imped[ing], delay[ing], or frustrat[ing] the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

**24.** If, on the other hand, Dr. Gardner continues to assert that he will be on these medications "probably perpetually" and thus unable to confirm that he can testify truthfully and accurately in this case, the United States requests that the Court hold an evidentiary hearing to confirm Dr. Gardner's assertions and consider other consequences if warranted, including discovery extensions, adverse inferences, and excluding Dr. Gardner from testifying at trial.

**25.** Finally, the United States emailed Dr. Gardner's counsel on October

18 to obtain Dr. Gardner's position on this motion, as Local Rule 7.1(a) requires. *See* Ex. D at 1–2. Without providing Dr. Gardner's position on the sanctions motion, Dr. Gardner's counsel responded on October 20, stating: "I do not see a way to agree to a resumption of [Dr. Gardner's] deposition at a time when he is not taking his prescriptions because we do not know how long he will be on them. I would be willing to set a date certain with the agreement that he would inform you perhaps five days in advance if he is still taking prescription medication and it would be your decision to go forward with the deposition or not. I am not sure that is much of a resolution but I am open to suggestions." *Id.* at 1. Counsel for the United States responded by email on October 23, again asking for Dr. Gardner's position on this sanctions motion and stating: "Unfortunately, I agree with you that your suggested approach isn't much of a resolution, as it allows Dr. Gardner to delay his deposition effectively indefinitely — I think the [C]ourt will need to get involved with this issue." *Id.* The United States did not receive a response to this email and is therefore uncertain whether Dr. Gardner intends to oppose this motion.

    WHEREFORE, the Court should grant the motion for sanctions.

        Respectfully submitted,

October 24, 2023        Alexander M.M. Uballez
        *United States Attorney*

        *s/ Benjamin G. Minegar*
        Benjamin G. Minegar
        *Assistant United States Attorney*
        P.O. Box 607
        Albuquerque, NM 87103
        (505) 346-7274
        benjamin.minegar@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that, on October 24, 2023, I filed the foregoing document electronically through CM/ECF, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

        *s/ Benjamin G. Minegar*
        Benjamin G. Minegar