**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                No. CIV 22-0830 JB/JFR

WILLIAM C. GARDNER, DDS,

   Defendant.

**<u>MEMORANDUM OPINION</u>[1]**

  **THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion for Summary Judgment and Memorandum in Support, filed December 23, 2024 (Doc. 165)("MSJ"); (ii) the Plaintiff's [sic] Motion to Dismiss for Improper/Lack of Service and Lack of Jurisdiction, filed September 9, 2025 (Doc. 195)("First MTD"); (iii) the Defendant's Motion to Dismiss Federal Rule of Civil Procedure (FRCP) 60(b)(4), filed January 5, 2025 (Doc. 198)("Second MTD"); (iv) the Plaintiff [sic] Motion for Leave by the Court to Use Pacer System, filed January 5, 2026 (Doc. 199)("Motion for Leave"); and (v) the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Relief from Void Judgment Pursuant to Fed. R. Civ. P. 60(b)(4), filed March 5, 2026 (Doc. 214)("Third MTD"). The primary issues are: (i) whether there is a material question regarding the credibility of Drug Enforcement Agent ("DEA") Kristin T. Tamayo's testimony in the Declaration of Diversion Investigator Kristin T. Tamayo (executed December 23, 2024), filed December 23, 2024 (Doc. 165-2)("Tamayo Decl.") which requires submission of this case to a jury,

---

[1] On February 3, 2025, the Court enters an Order granting in part and denying in part the requests in the Plaintiff's Motion for Summary Judgment and Memorandum in Support, filed December 23, 2024 (Doc. 165). <u>See</u> Order at 1-2, filed February 3, 2025 (Doc. 185). In the Order, the Court states that it will "issue a Memorandum Opinion at a later date more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion is the promised opinion.

because Tamayo violates DEA regulations governing inspection of controlled premises pursuant to 21 C.F.R. § 1316.05 when collecting Dr. Gardner's prescriptions from pharmacies; (ii) whether the Court may consider prescriptions, prescription labels, handwritten notes by pharmacy personnel, patient statements, and the Declaration of Drug Enforcement Agent ("DEA") Kristin T. Tamayo (executed December 23, 2024), filed December 23, 2024 (Doc. 165-2)("Tamayo Decl."), relating to this evidence when evaluating the MSJ; (iii) whether Defendant William Gardner, DDS violates the Comprehensive Drug Abuse Prevention and Control Act of 1970, also known as the Controlled Substances Act, 21 U.S.C. §§ 801-971 ("CSA"), by issuing prescriptions for controlled substances during a period when the State of New Mexico revokes his dental license and when his State controlled substances license is expired; (iv) whether the Court should impose monetary penalties for Dr. Gardner's violations, as the CSA prescribes; (v) whether the Court should grant the First MTD, because Plaintiff United States of America does not properly serve Dr. Gardner; (vi) whether the Court should grant the Second MTD, because the MSJ judgment is void under rule 60(b)(4) of the Federal Rules of Civil Procedure; (vii) whether the Court should allow Dr. Gardner, proceeding pro se, to use the PACER system; and (viii) whether the Court should grant the Third MTD, because the Court does not have subject-matter jurisdiction.  The Court concludes that: (i) Tamayo's testimony in the Tamayo Decl. is credible and, accordingly, does not require submission of this case to a jury, because Tamayo does not violate DEA regulations governing inspection of controlled premises pursuant to 21 C.F.R. § 1316.05 when collecting Dr. Gardner's prescriptions from pharmacies; (ii) the Court may consider the prescriptions, handwritten notes by pharmacy personnel, and the Tamayo Decl. testimony relating to this evidence when evaluating the MSJ, because this evidence either is not hearsay or is admissible hearsay, but not the prescription labels, patient statements, and Tamayo's deposition testimony relating to this evidence, because this evidence is impermissible hearsay; (iii) Dr. Gardner violates the CSA by issuing prescriptions for

controlled substances during a period when the State revokes his State dental license and his State controlled substances license is expired; (iv) the Court imposes monetary penalties that the CSA prescribes for Dr. Gardner's violations, in the amount of $4,000.00 for each of Dr. Gardner's unlawful prescriptions where there is no genuine dispute of material fact as to Dr. Gardner's responsibility for the prescriptions. The Court concludes that there is no genuine dispute of material fact as to eighty of the ninety-four alleged prescriptions; (v) the Court denies the First MTD, because Dr. Gardner waives his defense of improper service by filing an Answer, filed December 12, 2022 (Doc. 4), without raising this defense; (vi) the Court denies the Second MTD, because the MSJ is not void under rule 60(b)(4);  (vii) the Court grants Dr. Gardner, proceeding pro se, access to the PACER system;[2] and (viii) the Court denies the Third MTD, because the Court has subject-matter jurisdiction in this case.

## FACTUAL BACKGROUND

The Court draws its undisputed facts from the United States' assertion of undisputed material in its MSJ.  See MSJ ¶¶ 1-12, at 2-5.  In support of the MSJ, the United States submits the following evidence: (i) Decision and Order Before the New Mexico Board of Dental Health Care, Case No. 18-61-COM (dated November 26, 2019), filed December 23, 2024 (Doc. 165-1)("Dental License Revocation Order"); (ii) Declaration of Diversion Investigator Kristin Y. Tamayo (dated December 23, 2024), filed December 23, 2024 (Doc. 165-2)("Tamayo Decl."); (iii) Declaration of Kathleen Roybal (dated December 18, 2024), filed December 23, 2024 (Doc. 165-3)("Roybal Decl."); (iv) Excerpts of Deposition of Charles Schumacher (dated August 16, 2024), filed December 23, 2024 (Doc. 165-4)("Schumacher Depo."); (v) State Court Order, William Gardner,

---

[2] For the reasons stated on the record at the hearing, see Draft Transcript of Hearing at 38:6-11 (taken March 10, 2026)(Court)("Hearing Tr."), the Court grants the Plaintiff [sic] Motion for Leave by the Court to Use Pacer System, filed January 5, 2026 (Doc. 199)("Motion for Leave").

D.D.S., P.A., v. New Mexico Board of Dental Health Care, No. D-101-CV-2019-02207, State Court Order (County of Santa Fe, 1st Jud. Dist. Ct. N.M. July 7, 2020), filed December 23, 2024 (Doc. 165-5)("Order Lifting Stay"); (vi) Decision and Default Order Before the Dental Health Care Board for the State of New Mexico, Case No. 18-61-COM (dated December 12, 2020), filed December 23, 2024 (Doc. 165-6)("Dental Enforcement Order"); (vii) Summary of Prescriptions No. 1, filed December 23, 2024 (Doc. 165-7); (viii) Decision and Order for Revocation Before the New Mexico Board of Pharmacy, Case No. 2021-002 (dated November 2, 2021), filed December 23, 2024 (Doc. 165-8)("Controlled Substances License Revocation"); (ix) William Gardner, D.D.S., P.A., v. New Mexico Board of Dental Health Care, No. D-101-CV-2021-00124, State Court Order (County of Santa Fe, 1st Jud. Dist. Ct. N.M. June 21, 2021), filed December 23, 2024 (Doc. 165-9)("June 11, 2021 Order"); (x) William Gardner Deposition, filed December 23, 2024 (Doc. 165-10)("Gardner Depo."); (xi) Prescriber Activity Report (dated January 20, 2021), filed December 23, 2024 (166-1); (xii) Tamayo Prescription Log, filed December 23, 2024 (Doc. 166-2); (xiii) Summary of Prescriptions No. 2, filed December 23, 2024 (Doc. 166-3); (xiv) Summary of Prescriptions No. 3, filed December 23, 2024 (Doc. 166-4); (xv) Summary of Prescriptions No. 4, filed December 23, 2024 (Doc. 166-5); Patient Prescription Reports, filed December 23, 2024 (Doc. 166-6); (xvi) Katherine Gardner v. William Gardner, No. D-202-DM-2023-03332, Receiver's and Special Master's April 25, 2024 Report (County of Bernalillo, 2d Jud. Dist. Ct. N.M. April 24, 2024), filed December 23, 2024 (Doc. 166-7)("Receiver/Special Master Report").

Dr. Gardner files a response to the MSJ, see Defendant's Response to Plaintiff's Motion for Summary Judgment, filed January 15, 2025 (Doc. 174)("Response"), but does not comply with D.N.M. LR-Civ 56.1(b)'s requirements, which require that a "party opposing the motion must file a response containing a short, concise statement of the reasons in opposition to the motion with authorities." D.N.M. LR-Civ 56.1(b).  Further, D.N.M. LR-Civ 56.1(b) requires:

> The response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M. LR-Civ 56.1(b). Dr. Gardner instead appears to only contradict the United States' undisputed material fact ¶ 11, at 5 -- which states that, "[b]etween July 17, 2020 and February 1, 2021, Dr. Gardner wrote 92 prescriptions for controlled substances and caused those prescriptions to be submitted to pharmacies, and 2 prescriptions previously issued by Dr. Gardner were refilled . . . ." -- by arguing that this statement of material fact is based on

> inadmissible hearsay evidence of prescription information seized from several pharmacies by the United States Drug Enforcement Agency ("DEA") in violation of the DEA's regulations on inspecting controlled premises. DEA Diversion Investigator Kristin Tamayo failed to give the pharmacies proper notice of inspection and obtain their written informed consent in violation of DEA regulations in order to obtain the prescription information from the pharmacies contained in Plaintiff's Exhibits H&G. Her conduct creates a material question of her credibility for the jury to resolve at trial.

Response at 1. By not responding to any of the facts that the MSJ specifically alleges other than ¶ 11, at 5, Dr. Gardner allows the Court to deem undisputed all facts in the MSJ other than ¶ 11, at 5. See D.N.M. LR-Civ 56.1(b)("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

Dr. Gardner previously holds New Mexico dental license number DD1867. See MSJ ¶ 1, at 2 (asserting this fact)(citing Dental License Revocation Order). Dr. Gardner previously holds DEA registration number BG9826427. See MSJ ¶ 2, at 3 (asserting this fact)(citing Tamayo Decl.; William C. Gardner, D.D.S.; Decision and Order, 86 Fed. Reg. 54476, 54478 (Drug Enf't Admin. Oct. 1, 2021)("DEA Revocation Order")). The New Mexico Board of Dental Health Care ("Dental Board") revokes Dr. Gardner's dental license DD1867 on November 26, 2019. See MSJ ¶ 3, at 3 (asserting this fact)(citing Dental License Revocation Order at 5; Roybal Decl. ¶ 6(f), at 2;

- 5 -

Schumacher Dep. at 141:15-142:4, 154:25-155:3; Gardner v. Schumacher, 547 F.Supp.3d 955, 1007, 1010 (D.N.M. 2021)(Browning, J.)("Schumacher"). The Dental License Revocation Order states: "'Substantial evidence supports a finding that Respondent'" (i) "'submitted false claim forms to Delta Dental for the purpose of obtaining payment for unnecessary dental procedure'"; (ii) "'falsified a x-ray/radiograph'"; and (iii) "'failed to cooperate with the Board investigation when he refused to provide the original x-rays/radiographs and patient records in his sole possession to the Board.'" MSJ ¶ 4, at 3 (asserting this fact)(quoting Dental License Revocation Order at 5).

On December 19, 2019, the First Judicial District Court of the State of New Mexico temporarily stays enforcement of the Dental Board's November 26, 2019 order. See MSJ ¶ 5, at 4 (asserting this fact)(citing Order Lifting Stay; Roybal Declaration ¶¶ 6(g), (h), at 2; Schumacher, 547 F.Supp.3d at 1011-12). On July 7, 2020, the First Judicial District Court lifts the stay. See MSJ ¶ 6, at 4 (asserting this fact)(citing Order Lifting Stay at 3; Schumacher, 547 F.Supp.3d at 1012). The First Judicial District Court authorizes the Dental Board to enforce its decision on July 17, 2020. See MSJ ¶ 6, at 4 (asserting this fact)(citing Order Lifting Stay at 3). The revocation of Dr. Gardner's license takes effect, therefore, on July 17, 2020. See MSJ ¶ 7, at 4 (asserting this fact)(citing Dental Enforcement Order; Roybal Declaration ¶ 6(j), at 2; Schumacher Depo. at 154:21-155:3; id. at 175:4-7; id. at 184:24-185:17; id. at 220:7-220:23; Schumacher, 547 F.Supp.3d at 1054). Dr. Gardner's dental license DD1867 has been continuously revoked since July 17, 2020. See MSJ ¶ 8, at 4 (asserting this fact)(citing Roybal Decl. ¶ 6(n), at 2; Schumacher Depo. at 220:7-23). The State of New Mexico has not granted Dr. Gardner a new license since the revocation of license DD1867. See MSJ ¶ 9, at 4 (asserting this fact)(citing Roybal Decl. ¶ 6(o), at 2). Dr. Gardner's State of New Mexico controlled substances license expires effective October 1, 2020, and the Board of Pharmacy later rejects his application for renewal and formally revokes his State controlled substances license. See MSJ ¶ 10, at 4-5 (asserting this fact)(citing Controlled

Substances License Revocation; DEA Revocation Order at 54478).

Between July 17, 2020, and February 1, 2021, Dr. Gardner writes ninety-two prescriptions for controlled substances and causes those prescriptions to be submitted to pharmacies, and two prescriptions that Dr. Gardner previously issues are refilled.  See MSJ ¶ 11, at 5 (asserting this fact)(citing Tamayo Decl. ¶¶ 6, 11, at 2, 3; Prescriber Activity Report; Patient Prescription Reports).[3]  The DEA issues an Order to Show Cause and Immediate Suspension of Revocation to Dr. Gardner on May 11, 2021.  See MSJ ¶ 12, at 5 (asserting this fact)(citing DEA Revocation Order at 54476).  Through a Decision and Order effective November 1, 2021, the DEA formally revokes Dr. Gardner's DEA registration, No. BG9826427.  See MSJ ¶ 12, at 5 (asserting this fact)(citing DEA Revocation Order at 54476).

## PROCEDURAL BACKGROUND

On November 2, 2022, the United States files its Complaint for Violation of the Controlled

---

[3] Although Dr. Gardner does not assert directly a contrary fact to contradict the United States' assertion of material fact, Dr. Gardner appears to contradict this material fact by asserting that this fact remains a genuine issue of fact for the jury, because this fact is based on Tamayo's statements in the Tamayo Decl.; because of her conduct in failing to "give the pharmacies proper notice of inspection and obtain their written informed consent in violation of DEA regulations in order to obtain the prescription information from the pharmacies contained in" the Prescriber Activity Report and the Patient Prescription Report, there is "a material question of her credibility for the jury to resolve at trial."  Response at 1.  Dr. Gardner further argues that the United States' asserted material fact ¶ 11, at 5 is based on evidence -- the Tamayo Decl., prescriptions, prescription labels, and patient statements -- which constitute inadmissible hearsay, and therefore should not be considered on summary judgment.  See Response at 1-2.  The Court disagrees with both of Dr. Gardner's arguments.  See infra Sections I, II(A) (discussing the Court's conclusions in greater depth).  Concluding that credible and admissible evidence supports the United States' asserted material fact ¶ 11, at 5 for eighty of the alleged prescriptions, and in the absence of Dr. Gardner asserting a contradictory asserted fact with citations to admissible evidence in the record that demonstrates a genuine issue of fact, the Court concludes that there is no sound reason not to accept the United States' material fact as true for these eighty prescriptions, and, accordingly, shall treat this fact as true.  As discussed more in depth below,  see infra Section II(B), however, the Court concludes that Dr. Gardner introduces a genuine issue of material fact as to his responsibility for fourteen of the alleged prescriptions, and, accordingly, does not treat the United States' material fact ¶ 11, at 5 as true for the following fourteen prescriptions: 489581, 60393, 491685, 2365864, 1921501, 1111437, 778882, 3718293, 2563134, 2560790, 1504717, 1547380, 2873772, 4127714.

Substances Act and the False Claims Act (Doc. 1), alleging an action for civil penalties against Dr. Gardner for violation of the CSA and the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA").  The parties jointly request to dismiss the FCA claim, and the Court obliges, dismissing the FCA claim on June 25, 2024.  See Order of Partial Dismissal of Claims, at 1, filed June 25, 2024 (Doc. 115). Dr. Gardner then files a counterclaim on August 13, 2024, against the United States, the DEA, Kristin Tamayo in both her professional capacity as a DEA agent and in her individual capacity, and Nicolas Romero in both his professional capacity as a DEA agent and in his individual capacity, alleging that the counter-Defendants "acted under color of federal and state law had violated Counter Plaintiff's rights under the Fourth, Fifth, Eight, and Fourteenth Amendments to the Constitution of the United States," as well as a claim for "Violation of NM Civil Rights act of 2021."   Constitutional Tort Bivens Counterclaim on Federal Agents in Violation of the US Constitutions' Fourth, Fifth, Eighth, and Fourteenth Amendments and Equitable Relief at 1-2, filed August 13, 2024 (Doc. 136).  Dr. Gardner voluntarily dismisses his Counterclaims on September 20, 2024.  See Notice of Voluntary Dismissal of Counterclaim [Doc. 136] at 1, filed September 20, 2024 (Doc. 148).  The only claim remaining in the case, therefore, is the United States' claim for the CSA violation, which is currently before the Court on this MSJ.

In the MSJ, the United States argues first that, because the State of New Mexico does not license Dr. Gardner as a dentist or to dispense controlled substances, the prescriptions he issues while unlicensed are unlawful under the CSA.  See MSJ at 6.  The United States contends that, under the CSA, only a DEA-registered practitioner may prescribe controlled substances.  See MSJ at 7 (citing 21 U.S.C. § 829; 21 C.F.R. § 1306.03).  Further, the United States argues that a practitioner prescribing controlled substances also must be "'authorized to prescribe controlled substances by the jurisdiction in which he or she is licensed to practice.'"  MSJ at 7 (quoting 21 C.F.R. § 1306.03).  The United States maintains that the State of New Mexico revokes Dr.

Gardner's State dental license effective July 17, 2020, and that his State controlled substances license expires effective October 1, 2020. See MSJ at 8. The United States further contends that Dr. Gardner, while unlicensed, issues ninety-two prescriptions for controlled substances and causes two refills to be filled, which constitutes a CSA violation. See MSJ at 10-13. The United States argues that, because Dr. Gardner issues these unlawful prescriptions, monetary penalties are necessary under the CSA. See MSJ at 13. The United States asks that the Court "impose a penalty of no less than $5,000 for each of the 94 unlawful prescriptions, for a total of $470,000," arguing that because of "Dr. Gardner's patent disregard for his obligations under the CSA, his decision to practice dentistry while unlicensed, the extended duration of his misconduct, his efforts to undermine DEA investigators, the high proportion of Schedule II prescriptions, and his total ability to pay, a total penalty of this amount is warranted." MSJ at 17.

In the Response, Dr. Gardner argues that the MSJ is based in part "on inadmissible hearsay evidence of prescription information seized from several pharmacies by the United States Drug Enforcement Agency ("DEA") in violation of the DEA's regulations on inspecting controlled premises." Response at 1. Dr. Gardner argues that DEA regulations governing inspection of controlled premises require that Tamayo follow the steps in 21 C.F.R. § 1316.05 when entering each pharmacy to seize the prescription information concerning Dr. Gardner, including a requirement that Tamayo provide each pharmacy with written notice of inspection. See Response at 2. Tamayo instead calls ahead to ask for the prescription information, presents her DEA credentials upon arrival at the pharmacy, and leaves with the prescription information. See Response at 4. Dr. Gardner analogizes Tamayo's conduct to an unlawful search and seizure under the Fourth Amendment, stating that Tamayo "violates her statutory duty to give proper notice of inspection to and informed consent from the pharmacies in an apparent rush to seize the pharmacy information in order to implicate" Gardner in violating the CSA. Response at 4. Dr. Gardner argues

that Tamayo's violation of the DEA's notice and consent regulations "raises a material question concerning her credibility as to her investigation of" Dr. Gardner, and asks that the Court not credit the testimony at the summary judgment stage but allow a jury to evaluate Tamayo's credibility instead. Response at 4. Further, Dr. Gardner argues that both the Tamayo Decl. testimony concerning the seized prescription information, and the prescriptions, prescription labels, and patient statements relating to these prescriptions, are hearsay and inadmissible at the summary judgment stage under Federal Rule of Civil Procedure 56(c)(4). See Response at 5. Dr. Gardner argues that, without this inadmissible hearsay evidence, "there is a triable issue of fact concerning whether Defendant dispensed controlled substances in violation of the CSA," and, accordingly, the Court should deny the MSJ. Response at 7.

In the Plaintiff's Reply in Support of Summary Judgment, filed January 28, 2025 (Doc. 180), the United States highlights that Gardner does not specifically controvert any facts in the MSJ and asks the Court to reject Dr. Gardner's attempt to manufacture a credibility issue instead. See Reply at 2. The United States argues that Tamayo is not required to provide the pharmacies with a DEA Form 82 to pick up the prescription documents, because the notice requirement applies only to the entry of a controlled premises for the purpose of conducting administrative inspections. See Reply at 3 (citing 21 U.S.C. § 880; 21 C.F.R. § 1316.03). The United States maintains that Tamayo "did not inspect any controlled premises during the process of collecting Defendant's prescriptions." Reply at 3. The United States further argues that Dr. Gardner "offers no evidence of any inconsistencies or conflicting evidence that suggest any credibility issues," and asks the Court to reject Dr. Gardner's "attempt to manufacture a credibility issue for the sole purpose of defeating summary judgment . . . ." Reply at 4. Turning to Dr. Gardner's second argument, the United States argues that the prescriptions are not hearsay, because "[p]rescriptions written by an opposing party fall within the scope of the hearsay exclusion in 801(d)(2)." Reply at 5 (citing

- 10 -

United States v. Ruan, 966 F.3d 1101, 1150-51 (11th Cir. 2020), vacated on other grounds, 597

U.S. 450; United States v. Bruner, 657 F.2d 1278, 1285 (D.C. Cir. 1981); United States v. Cain,

586 F. App'x 104, 107 (4th Cir. 2014)).  With regards to authenticity, the United States maintains

that it has established that the prescriptions are authentic, stating that DEA officials' testimony may

authenticate prescriptions, and highlighting both Tamayo's testimony and that the "prescriptions

themselves bear multiple indicia of authenticity . . . ." Reply at 6.  The United States concludes by

arguing that Dr. Gardner has not identified a genuine factual dispute, and that the evidence which

the United States submits supports an entry of summary judgment with respect to liability.  See

Reply at 7.

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant

bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving

party's case.'" Herrera v. Santa Fe Pub. Schs., 956 F. Supp. 2d 1191, 1221 (D.N.M.

2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th

Cir. 1991)(alteration in Herrera v. Santa Fe Pub. Schs.)). See Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986)("Celotex").

> Before the court can rule on a party's motion for summary judgment, the moving party must satisfy its burden of production in one of two ways: by putting evidence into the record that affirmatively disproves an element of the nonmoving party's case, or by directing the court's attention to the fact that the non-moving party lacks evidence on an element of its claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323-25. On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007)(internal quotations and brackets omitted).

- 11 -

Plustwik v. Voss of Nor. ASA, No. 11-0757, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(Sam, J.)(emphasis added). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[4] Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)("Liberty Lobby").  In American Mechanical Solutions, LLC v. Northland Piping, Inc., 184 F. 3d 1030 (D.N.M. 2016)(Browning, J.), the Court grants summary judgment for the defendant when the plaintiff does not offer expert evidence supporting causation or proximate causation in its breach-of-contract or breach-of-the-implied-warranty-of-merchantability claims.  See 184 F. 3d at 1075-78. The Court reasons that the plaintiff cannot prove the breach-of-contract claim's causation requirement or the breach-of-the-implied-warranty-of-merchantability claim's proximate-causation requirement with mere common knowledge, see 184 F. Supp. 3d at 1073, and so New Mexico law requires that the plaintiff bolster its arguments with expert testimony, see 184 F. Supp. 3d at 1067, which the plaintiff does not provide, see 184 F. Supp. 3d at 1075. The Court determines that, without the requisite evidence, the plaintiff fails to prove "an essential element of the nonmoving party's case . . . render[ing] all other facts immaterial." Am. Mech. Sol., LLC v. Northland Piping, Inc., 184 F. Supp. 3d at 1075 (quoting Plustwik v. Voss of Nor. ASA, No. 11-00757, 2013 WL

---

[4] Although the Honorable William J. Brennan, Jr., then-Associate Justice of the Supreme Court, dissented in Celotex, this sentence is widely understood to be an accurate statement of the law.  See 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

1945082, at *1 (D. Utah 2013)(Sam, J.)).

Thus, if a plaintiff has the burden of proof, and the plaintiff has no competent evidence, the defendant, even without any competent evidence itself, may secure summary judgment by pointing out the plaintiff's lack of competent evidence. See Celotex, 477 U.S. at 323-25 (providing that summary judgment is proper where a plaintiff lacks evidence on an essential element of its case); Am. Mech. Sols., LLC v. Northland Piping, Inc., 184 F. Supp. 3d at 1075 (granting summary judgment because plaintiff lacks evidence on causation); Morales v. E.D. Entyre & Co., 382 F. Supp. 2d 1252, 1272 (D.N.M. 2005)(Browning, J.)(granting summary judgment because plaintiff lacked competent evidence that the defendants defectively manufactured an oil distributor). A conclusory assertion that the plaintiff lacks evidence is insufficient, however, to secure summary judgment; the defendant must make some evidentiary showing that the plaintiff lacks competent evidence. See Halley v. Huckaby, 902 F.3d 1136, 1143 (10th Cir. 2018)(stating that summary judgment may be warranted if the movant notes a lack of evidence for an essential element of the claim). See also 11 James Wm. Moore et al., Moore's Federal Practice § 56.40[1][b][iv], at 56-109 to -111 (3d ed. 2018).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (citing Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d at 1241)). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored

- 13 -

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Liberty Lobby, 477 U.S. at 259. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (quoting Coleman v. Darden, 595 F.2d 533, 536 (10th Cir. 1979)).

A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)(McConnell, J.)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.' " Colony Nat'l Ins. v. Omer, 2008 WL 2309005, at * 1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)). To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Liberty Lobby, 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. See Liberty Lobby, 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)("Schuylkill")); Vitkus v. Beatrice Co., 11 F.3d at 1539.

- 14 -

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. [First Nat. Bank of Ariz. v.] Cities Service,[ ] 391 U.S. [253], 288-[89] . . . . If the evidence is merely colorable, Dombrowski v. Eastland, 387 U.S. 82, 87 . . . (per curiam), or is not significantly probative, Cities Service, . . . at 290 . . . summary judgment may be granted.

Liberty Lobby, 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, cannot find for the nonmoving party, "there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Liberty Lobby, 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Liberty Lobby, 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor and construe all evidence in the light most favorable to the nonmoving party. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Liberty Lobby, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); Tolan v. Cotton, 572 U.S. 650, 651 (2014). Fourth, the court cannot decide any credibility issues. See Liberty Lobby, 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts. In Scott v. Harris, 550 U.S. 372, the Supreme Court of the United States concludes that summary judgment is appropriate where video evidence clearly contradicts the

plaintiff's version of the facts. See 550 U.S. at 378-81. The Supreme Court explains:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (alterations in Scott v. Harris)(emphasis in Liberty Lobby). The

Tenth Circuit applies this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009),

and explains:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'" York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cty., 584 F.3d at 1312 (second alteration in Thomson v. Salt Lake Cty., third

and fourth alterations in York v. City of Las Cruces). "The Tenth Circuit, in Rhoads v. Miller, [352

F. App'x 289 (10th Cir. 2009),] explained that the blatant contradictions of the record must be

supported by more than other witnesses' testimony." Lymon v. Aramark Corp., 728 F. Supp. 2d

1222, 1249 (D.N.M. 2010)(Browning, J.), aff'd, 499 F. App'x 771 (10th Cir. 2012).

Parties may allege new claims in motions for summary judgment. See Evans v. McDonald's Corp., 936 F.2d 1087, 1090-91 (10th Cir. 1991). When a party raises a new claim in a motion for summary judgment, a court treats the motion for summary judgment as a request to amend the complaint pursuant to rule 15 of the Federal Rules of Civil Procedure. See Viernow v. Euripides Dev. Corp., 157 F.3d 785, 790 n.9 (10th Cir. 1998). The Tenth Circuit states:

> [A]s a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits."

Evans v. McDonald's Corp., 936 F.2d at 1090-91 (quoting 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1219, at 94 (4th ed. 2021)("Wright & Miller)). While the purpose of "fact pleading" is to give defendants fair notice of claims against them "without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery," plaintiffs may not "wait until the last minute to ascertain and refine the theories on which they intend to build their case." Evans v. McDonald's Corp., 936 F.2d at 1091.

Finally, a court cannot grant summary judgment when it is necessary to weigh the credibility of the witnesses available. See Fogarty v. Gallegos, 523 F.3d 1147, 1165 (10th Cir. 2008)("On summary judgment, a district court may not weigh the credibility of the witnesses."); Eagle v. La. & S. Life Ins. Co., 464 F.2d 607, 608 (10th Cir. 1972)("Summary judgment is not proper when an issue turns on credibility."); McGrath v. City of Albuquerque, No. CIV 14-0504 JB/SCY, 2015 WL 4997153, at * 12 (D.N.M. July 31, 2015)(Browning, J.). "Doubts as to the credibility of the [summary judgment] movant's affiants or witnesses may lead the court to conclude that a genuine issue of material fact exists . . . . 'Where an issue as to material fact cannot be resolved without

observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment

is not appropriate.'" Wright & Miller, 10A Fed. Practice & Proc. § 2726 (quoting Advisory

Committee Note to 1963 amendment of Fed. R. Civ. P. 56).

> A similar problem involving credibility arises when the knowledge of the events or occurrences on which the action is based lies exclusively within the control of the party moving for summary judgment . . . . Courts have been reluctant to deprive the nonmoving party of the opportunity of testing the credibility of the movant or the movant's witnesses in open court in this context. As explained by one commentator, "there is a justifiable judicial fear of the injustice which could result from judgment based on affidavits asserting facts that are, because of their nature, incapable of being effectively controverted.

Wright & Miller, 10A Fed. Practice & Proc. § 2726 (quoting Advisory Committee Note to 1963

amendment of Fed. R. Civ. P. 56). See also Jaxon v. Circle K Corp., 773 F.2d 1138, 1140 n.2 (10th

Cir. 1985); Weir v. Anaconda Co., 773 F.2d 1073, 1081-82 (10th Cir. 1985). Nonetheless, "[t]he

general rule is that," at the summary judgment stage of litigation, the party challenging the

credibility of a sworn statement "must" produce "specific facts . . . in order to put credibility in

issue so as to preclude summary judgment. Unsupported allegations that credibility is an issue will

not suffice." Wright & Miller, 10A Fed. Practice & Proc. § 2726 (footnotes omitted). See also

Prochaska v. Marcoux, 632 F.2d 848, 851 (10th Cir. 1980); Wright & Miller, 10B Fed. Practice &

Proc. § 2730.

<strong><u>RELEVANT LAW REGARDING HEARSAY</u></strong>

"Hearsay testimony is generally inadmissible." United States v. Christy, No. CR 10-1534

JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid.

802). Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement that: (1) the

declarant does not make while testifying at the current trial or hearing; and (2) a party offers in

evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Courts

deem hearsay generally unreliable and untrustworthy. See Chambers v. Mississippi, 410 U.S. 284,

298 (1973)(noting that hearsay is generally untrustworthy and lacks traditional indicia of reliability); United States v. Lozado, 776 F.3d 1119, 1121 (10th Cir. 2015)("Hearsay is generally inadmissible as evidence because it is considered unreliable." (citing Williamson v. United States, 512 U.S. 594, 598 (1994))); United States v. Console, 13 F.3d 641, 656 (3d. Cir. 1993)(stating that hearsay is "'inherently untrustworthy'" because of the lack of an oath, presence in court, and cross examination (quoting United States v. Pelullo, 964 F.2d 193, 203 (3rd Cir. 1992))). Courts use three devices to illuminate inaccuracies in the testimonial proof: (i) the oath; (ii) personal presence at trial; (iii) and cross examination. See 5 Jack Weinstein & Margaret Berger, Weinstein's Federal Evidence § 802.02[2][a], at 802-5 (Joseph McLaughlin ed., 2d ed. 2017)("Weinstein's Federal Evidence"). Courts view hearsay evidence as unreliable, because it is not subject to an oath, personal presence in court, or cross examination, see, e.g., United States v. Console, 13 F.3d at 656; it is difficult to evaluate the credibility of out-of-court statements when these three safeguards are unavailable, see Weinstein's Federal Evidence § 802.02[3], at 802-6 to -7.

A statement is not hearsay, even if it is offered for its truth, if it is offered against an opposing party and it:

**(A)** was made by the party in an individual or representative capacity;

**(B)** is one the party manifested that it adopted or believed to be true;

**(C)** was made by a person whom the party authorized to make a statement on the subject;

**(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

**(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2). The Tenth Circuit states:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No

guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 667 (10th Cir. 2006)(Seymour, J.)(internal quotation marks and alterations omitted).

## LAW REGARDING SERVICE OF PROCESS

Under rule 4(m) of the Federal Rules of Civil Procedure, a court must dismiss a defendant where a plaintiff has not effected service upon a defendant within 120 days of the filing of the complaint. Rule 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time . . . .

Fed. R. Civ. P. 4(m). Under rule 4(I), "[i]f service is not waived, the person effecting service shall make proof thereof to the court." Fed. R. Civ. P. 4(l ).

Rule 12(b)(4) and 12(b)(5) allows a defendant to defend upon the grounds of insufficient service of process. Under rule 12(h), however, a defendant raising the defense of "service of process must be raised in a party's first responsive pleading or by motion before the responsive pleading." United States v. 51 Pieces of Real Property Roswell, N.M., 17 F.3d 1306, 1314 (10th Cir.1994). See Fed. R. Civ. P. 12(h)(1). "If a party files a pre-answer motion and fails to assert the defenses of lack of personal jurisdiction or insufficiency of service, he waives these defenses." Fed. Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 175 (10th Cir.1992)(citing Fed. R. Civ. P. 12(h)(1)).

## LAW REGARDING RULE 60(b)

A Court may set aside a default judgment under rule 60(b) of the Federal Rules of Civil

Procedure.  See Fed. R. Civ. P. 55(c); Advanced Optics Elec., Inc. v. Robins, 769 F.Supp.2d 1285, 1310 (D.N.M. 2010)(Browning, J.). Rule 60(b) governs motions for relief from a judgment or orders in federal court. The Tenth Court imposes a rigorous standard for rule 60(b)(6).  Rule 60(b) allows a court to relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), where "the judgment is void," Fed. R. Civ. P. 60(b)(4), or for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6). "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule."  Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983).  Rule 60(b) "is not a substitute for appeal, and must be considered with the need for finality of judgment." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v. McCormick, 608 F.2d 410, 413 (10th Cir. 1979)). The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice. Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444.

Motions to reconsider based on "mistake, inadvertence, surprise, or excusable neglect" must be brought "within a reasonable time ... no more than a year after the entry of the judgment or order or the date of the proceeding." Fed.R.Civ.P. 60(c)(1). See Blanchard v. Cortes–Molina, 453 F.3d 40, 44 (1st Cir. 2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought within one year of the judgment."). The pendency of an appeal does not toll the time requirement for pursuing a motion that rule 60(c)(1) governs. See Griffin v. Reid, 259 Fed.Appx. 121, 123 (10th Cir. 2007)(unpublished); Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year time limit of Rule 60(b)"). The Tenth Circuit uses three factors in determining whether a court may set aside a judgment in accordance with rule 60(b)(1): (i) whether the moving party's

- 21 -

culpable conduct caused the default; (ii) whether the moving party has a meritorious defense; and (iii) whether the nonmoving party setting aside the judgment will prejudice the non-moving party. See United States v. Timbers Preserve, 999 F.2d 452, 454 (10th Cir. 1993).

Motions to reconsider because the judgment is void must be brought within a "reasonable time." Fed.R.Civ.P. 60(c).   Relief under rule 60(b)(4) is "not a discretionary matter; it is mandatory." Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1166 (10th Cir. 2011). Under both New Mexico and federal law, where a plaintiff has failed to properly serve a defendant, the court lacks personal jurisdiction, and a judgment is void. See Hukill v. Okla. Native Am. Domestic Violence Coal., 542 F.3d at 801 ("Because the service in the case, attempted under Oklahoma law, did not substantially comply with the law of that state, the district court did not have personal jurisdiction. . . . Therefore, the district court erred in denying defendants' motion to set aside the default judgment under Fed. R. Civ. P. 60(b)(4)."); Edmonds v. Martinez, 146 N.M. 753, 756 (Ct.App.2009)("New Mexico has long recognized that 'a court lacks jurisdiction to pronounce judgment over a defendant of respondent unless that defendant or respondent has been properly summoned to court.' A court has no power to bind a party to judgment when that party has not been properly served").

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or proceeding for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  No time limit applies to rule 60(b)(6), save that the motion be made within a reasonable time.  See Fed. R. Civ. P. 60(c)(1). "Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.' " 11 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure, § 2864 (2d ed. 2011). In Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. 380 (1993), the Supreme Court reasoned that, to avoid abrogating the one year time limit for rule 60(b)(1) to (3), rule 60(b)'s "provisions are mutually exclusive, and thus a party who failed to take timely

- 22 -

action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 n. 11 (1988)). The Supreme Court expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. In Klapprott, for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control. Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 & n. 11; Ackermann v. United States, 340 U.S. 193, 197–200 (1950); Klapprott v. United States, 335 U.S. 601, 613-614 (1949)). See Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."). In Gonzalez v. Crosby, the Supreme Court found a change in the law during the pendency of a habeas petition was not an extraordinary circumstance. See 545 U.S. at 537.

**ANALYSIS**

The Court first concludes that there is no genuine issue of material fact regarding Dr. Gardner's CSA violation -- Dr. Gardner writes prescriptions without either a dental or controlled substances license -- and accordingly grants the MSJ on the issue of liability under the CSA.  In granting the MSJ, the Court determines first that the Tamayo Decl. testimony is credible and that there is no material question regarding Tamayo's credibility which requires the submission of this case to a jury.  The Court also determines that the prescriptions, the handwritten notes by pharmacy personnel, and the Tamayo Decl. testimony relating to this evidence is not inadmissible hearsay such that the Court may rely on this evidence in deciding the MSJ, although the Court concludes

that the prescription labels, the patient statements, and the Tamayo Decl. testimony relating to this evidence are inadmissible hearsay such that the Court cannot rely on it.  The Court then turns to the statutory penalties under the CSA and grants summary judgment as to eighty of the prescriptions, and, accordingly, imposes a penalty in the amount of $4,000.00 for each of Dr. Gardner's eighty unlawful prescriptions.  The Court denies summary judgment on penalties as to fourteen of the prescriptions, however, because the Court determines that Dr. Gardner raises a genuine issue of material fact as to his responsibility for these fourteen prescriptions.  Finally, the Court considers the three different MTDs which Dr. Gardner files, and denies all three.

I.   **TAMAYO'S TESTIMONY IS CREDIBLE, BECAUSE SHE DOES NOT VIOLATE DEA REGULATIONS GOVERNING INSPECTION OF CONTROLLED PREMISES PURSUANT TO 21 C.F.R. § 1316.05 WHEN COLLECTING DR. GARDNER'S PRESCRIPTIONS FROM PHARMACIES.**

DEA regulation 21 C.F.R. § 1316.05 governs the requirements for an inspector to carry out an inspection.  21 C.F.R. § 1316.05 says in full:

> An inspection shall be carried out by an inspector.  Any such inspector, upon (a) stating his purpose and (b) presenting to the owner, operator or agent in charge of the premises to be inspected (1) appropriate credentials, and (2) written notice of his inspection authority under § 1316.06 of this chapter, and (c) receiving informed consent under § 1316.08 or through the use of administrative warrant issued under §§ 1316.09-1316.13, shall have the right to enter such premises and conduct inspections at reasonable times and in a reasonable manner.

21 C.F.R. § 1316.05.  Dr. Gardner argues that the regulation requires Tamayo to give proper notice of inspection to pharmacies before arriving to collect Dr. Gardner's prescriptions, and that her violation of the DEA's inspection requirements "raises a material question concerning her credibility as to her investigation of" Dr. Gardner.  Response at 4.  Dr. Gardner contends that this material question requires the Court to submit the case to a jury so that the jury may evaluate Tamayo's credibility.  See Response at 4.  The Court disagrees with Dr. Gardner's argument.

Section 1316.05 applies only to the entry of a controlled premises for the purposes of

- 24 -

conducting administrative inspections.  See 21 C.F.R. § 1316.05.  Administrative inspections are searches under the Fourth Amendment.

> The Court long has recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes . . . .  This expectation exists not only with respect to traditional police searches conducted for the gathering of criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes.

New York v. Burger, 482 U.S. 691, 699 (1987).  A search is "either where the government, to obtain information, trespasses on a person's property or where the government violates a person's subjective expectation of privacy that society recognizes as reasonable to collect information."  United States v. Alabi, 943 F.Supp.2d 1201, 1241 (D.N.M. 2013)(Browning, J.)(citing United States v. Jones, 565 U.S. 400, 409 (2012), aff'd, 597 F. App'x 991 (10th Cir. 2015)).  Administrative inspections of controlled premises are:

> Official entry upon commercial property is a technique commonly adopted by administrative agencies at all levels of government to enforce a variety of regulatory laws; thus, entry may permit inspection of the structure in which a business is housed, as in this case, or inspection of business products, or a perusal of financial books and records.

See v. City of Seattle, 387 U.S. 541, 543-44 (1967).

Tamayo's actions in arriving at the pharmacies to pick up the prescriptions do not constitute administrative inspections such that she must comply with § 1316.05.  Tamayo does not enter into any of the pharmacies to check whether the pharmacies are complying with applicable regulations for the pharmacies; instead, she visits the pharmacies to pick up prescription documents that pharmacy personnel have gathered.  See Second Declaration of Diversion Investigator Kristin Y. Tamayo ¶¶ 5-7, at 2, filed January 28, 2025 (Doc. 180-1)("Second Tamayo Decl.")(explaining Tamayo's process of collecting the prescriptions, and stating: "My sole purpose for visiting the pharmacies was to collect the 94 prescriptions issued by William Gardner.  I did not engage in any activities aside from retrieving the prescriptions.  I engaged in no inspection of the pharmacies or

pharmacy personnel"). In the absence of any action intended to inspect the pharmacy itself, the mere act of an inspector entering a pharmacy to collect prescriptions relevant to an investigation into the legal compliance of an individual not associated with the pharmacy does not rise to the level of an administrative inspection such that compliance with § 1316.05 is necessary. Accordingly, there is no basis to find a material question regarding Tamayo's credibility sufficient to require denial of summary judgment and submission of this case to a jury. The Court therefore declines to deny summary judgment on this basis.

II.     **THERE IS NO GENUINE DISPUTE OF MATERIAL FACT THAT DR. GARDNER VIOLATES THE CSA BY ISSUING PRESCRIPTIONS FOR CONTROLLED SUBSTANCES DURING A PERIOD WHEN THE STATE REVOKES HIS STATE DENTAL LICENSE AND HIS STATE CONTROLLED SUBSTANCES LICENSE IS INVALID.**

The United States relies on different evidence in support of its contention that Dr. Gardner violates the CSA by issuing prescriptions for controlled substances without the appropriate State licenses, including the prescriptions themselves, prescription labels, patient statements, and the Tamayo Decl. relating to this evidence. Dr. Gardner asserts that this evidence is all inadmissible hearsay which the Court cannot consider, and that, in the absence of this evidence, there is a genuine dispute of material fact whether Dr. Gardner violates the CSA which requires the Court to deny the MSJ. See Response at 6-7. Accordingly, before the Court may determine whether there is a genuine dispute of material fact that Dr. Gardner violates the CSA, the Court must determine whether, under rule 104 of the Federal Rules of Evidence, the Court may consider the challenged evidence: the prescriptions, the prescription labels, handwritten notes by pharmacy personnel, patient statements, and the Tamayo Decl. relating to this evidence.

        A.     **THE COURT RELIES ON THE PRESCRIPTIONS AND HANDWRITTEN NOTES BY PHARMACY PERSONNEL IN DECIDING THE MSJ, BECAUSE THIS EVIDENCE IS NOT INADMISSIBLE HEARSAY, BUT DOES NOT RELY ON THE PRESCRIPTION LABELS, OR PATIENT STATEMENTS, BECAUSE THIS EVIDENCE IS INADMISSIBLE**

**HEARSAY.**

Under rule 104(a), a court must decide preliminary questions relating to the admissibility of evidence. See United States v. Meritt, 695 F.2d 1263, 1269-70 (10th Cir. 1982). In deciding such preliminary questions, the other rules of evidence, except those with respect to privileges, do not bind the Court. See Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so doing, the court is not bound by evidence rules, except those on privileges."). When resolving factual issues under rule 104(a) questions, a court acts as a factfinder and applies the preponderance-of-the-evidence standard. See Bourjaily v. United States, 483 U.S. 171, 175 (1987)("We are therefore guided by our prior decisions regarding admissibility determinations that hinge on preliminary factual questions. We have traditionally required that these matters be established by a preponderance of proof.").

At the summary judgment stage, "the parties need not submit evidence in a form admissible at trial; however, the content or the substance of the evidence must be admissible." Hardy v. S.F. Phosphates Ltd., 185 F.3d 1076, 1082 n.5 (10th Cir. 1999). "Tenth Circuit precedent dictates that hearsay contained within an affidavit remains inadmissible hearsay beyond judicial consideration at summary judgment." Friends of Animals v. Bernhardt, 15 F.4th 1254, 1271 (10th Cir. 2021). Dr. Gardner argues that the Tamayo Decl. contains inadmissible hearsay, because she describes both how she gathers the prescription information from the pharmacies and summarizes its contents, which "'includes copies of the prescriptions written by Dr. Gardner, copies of the prescription labels generated by the pharmacy, and, in some instances, handwritten notes by pharmacy personnel.'" Response at 6 (quoting Tamayo Decl. ¶ 9, at 3). Further, Dr. Gardner objects to a portion of the Tamayo Decl. where she describes how one patient tells her that Dr. Gardner issues ten of the prescriptions that the Prescriber Activity Report identifies. See Response at 6.

- 27 -

"A statement is not hearsay if it is offered against a party and it was made by the party in an individual or representative capacity." United States v. DeLeon, 287 F.Supp.3d 1187, 1256 (D.N.M. 2018)(Browning, J.)(citing Fed. R. Evid. 801(d)(2)(A)). Statements "made by a person whom the party authorized to make a statement on the subject" or statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" are also not hearsay. Fed. R. Evid. 801(d)(2)(C) and (D). Prescriptions that an opposing party writes are not hearsay under rule 801(d)(2). See United States v. Ruan, 966 F.3d 1101, 1150-51 (11th Cir. 2020), vacated on other grounds, 597 U.S. 450 ("[P]rescriptions written by [defendant] . . . are not hearsay because they constitute an opposing party's statement."). See also United States v. Bruner, 657 F.2d 1278, 1285 (D.C. Cir. 1981)(explaining that prescriptions are "explicitly excluded from the scope of hearsay" under the co-conspirator subsection of Rule 801(d)(2)); United States v. Cain, 586 F.App'x 104, 107 (4th Cir. 2014)("The fake prescriptions were created by Cain and his co-conspirators, and the Government did not offer them into evidence to prove the truth of any matter asserted. Thus, the prescriptions were not hearsay; and even if they were, they were admissible as co-conspirator statements.").

The Court first notes that Dr. Gardner stipulates to writing or authorizing all but fourteen of the ninety-four prescriptions at issue. See Gardner Deposition at 159:23-160:3 ("Q: Stipulate that they're all either signed by you, signed by your staff, or signed through the computer? A: Yeah. But there's some that I probably shouldn't say that because there's some that are absolutely -- Q: Why don't -- A: -- no way my signature."). For the remaining fourteen prescriptions that Dr. Gardner disputes, the Court determines that the evidence is sufficient to conclude by a preponderance of the evidence that Dr. Gardner is responsible for these prescriptions. All but two of the prescriptions are issued through Dr. Gardner's electronic medical record, "which includes details of his dental practice and his DEA registration number." Tamayo Decl. ¶ 12, at 4. Second,

the Prescriber Activity Report indicates Dr. Gardner issues all ninety-four of the prescriptions, because all ninety-four of the prescriptions are issued under Gardner's DEA registration number, which is BG 9826427.  See Prescriber Activity Report; Tamayo Decl. ¶ 12, at 4.  Finally, Tamayo visits Dr. Gardner's practice in Albuquerque after the State revokes his license, and witnesses Dr. Gardner continuing to practice dentistry by examining a patient in a dental examination room.  See Tamayo Decl. ¶ 13, at 4.  The Court determines that this evidence is sufficient for the Court, by a preponderance of the evidence, to attribute these prescriptions to Dr. Garder, or Dr. Gardner's staff acting under his authority.  Accordingly, the Court determines that all ninety-four of the prescriptions are not hearsay, because they are statements by a party opponent under rule 801(d)(2), and therefore are not hearsay.  See Fed. R. Evid. 801(d)(2). The Court therefore considers both prescriptions and the portions of the Tamayo Decl. which reference copies of the prescriptions in deciding the MSJ.

The handwritten notes by pharmacy personnel on the prescriptions are also not hearsay, and the Court may rely on these notes and the Tamayo Decl. related to these notes in evaluating the MSJ.  The Court does not consider these notes for the truth of the matter asserted.  That is, the Court does not evaluate whether the pharmacists' notes are true.  Instead, the Court only considers the fact of the existence of this handwriting on the prescriptions as it relates to the prescription's authenticity.  Accordingly, the Court concludes that these notes are not hearsay, and as such, the Court may consider these statements when evaluating whether there is a genuine issue of material fact that the prescriptions are attributable to Dr. Gardner.

The Court determines that the prescription labels which the pharmacy generates, however, are inadmissible hearsay, and therefore will not consider either the prescription labels themselves nor the portions of the Tamayo Decl. which rely on these prescription labels in deciding the MSJ. The prescription labels have the potential to be admissible hearsay under rule 803(6), the business

records exception to hearsay.  The business records exception allows the court to admit an out-of-court statement taken for the truth of the matter asserted if it is "a record of an act, event, condition, opinion, or diagnosis," and (i) "the record was made at or near the time by -- or from information transmitted by -- someone with knowledge"; (ii) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit"; (iii) "making the record was a regular practice of that activity"; (iv) "all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) with a statute permitting certification"; and (v) "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."  Fed. R. Evid. 803(6).  The main problem with applying the business records exception here to these pharmaceutical labels is that the United States does not present a qualified witness to authenticate these records as required under the rule.  The United States does not present a witness who is knowledgeable about the pharmacies' business practices of generating the labels such that they can attest that the pharmacies create the labels in the course of a regularly conducted activity and that making the record is a regular practice of that activity.  As a result of this dearth of testimony, the Court determines that the business records hearsay exception does not apply, and in the absence of an applicable hearsay exception, the pharmaceutical labels are inadmissible hearsay upon which the Court cannot rely while deciding the MSJ.

The Court also does not consider any portion of the Tamayo Decl. referencing the statements that patients make to Tamayo regarding Dr. Gardner's prescriptions.  See Tamayo Decl. ¶ 14, at 5 ("After identifying myself to A.A. as a DEA Diversion Investigator, A.A. informed me that she was Dr. Gardner's patient during this timeframe and he had issued the ten prescriptions listed above.").  The United States offers these statements for the truth of the matter that A.A asserts, to prove that Dr. Gardner prescribes these patients' prescriptions without a license, and the United States does

not proffer any testimony from these patients.  These statements are hearsay, and, concluding that

no hearsay exception applies to these statements, the Court cannot consider them.

      **B.**      **THERE IS NO GENUINE DISPUTE OF MATERIAL FACT THAT DR. GARDNER VIOLATES THE CSA BY ISSUING PRESCRIPTIONS FOR CONTROLLED SUBSTANCES DURING A PERIOD WHEN THE STATE REVOKES HIS STATE DENTAL LICENSE AND HIS STATE CONTROLLED SUBSTANCES LICENSE IS INVALID.**

The CSA governs persons that manufacture, distribute, and dispense controlled substances.

The term "dispense" means "to deliver a controlled substance to an ultimate user . . . , including the

prescribing . . . of a controlled substance . . . ."  21 U.S.C. § 802(10).  Under the CSA, regulated

persons must register with the Attorney General of the United States through the DEA.  See 21

U.S.C. §§ 802(10)-(21), 821.  Only a DEA-registered practitioner may prescribe controlled

substances.  See 21 U.S.C. § 829; 21 C.F.R. § 1306.03.  A "'practitioner' means a . . . dentist . . . or

other person licensed, registered, or otherwise permitted, by the United States or the jurisdiction in

which he practices . . . , to distribute, dispense, . . . a controlled substance in the course of

professional practice . . . ."  21 U.S.C. § 802(21).  To be lawful, a controlled substances prescription

must be issued "by an individual practitioner acting in the usual course of his professional practice

. . ."  21 C.F.R. § 1306.04.  A practitioner prescribing controlled substances also must be "authorized

to prescribe controlled substances by the jurisdiction in which he or she is licensed to practice."  21

C.F.R. § 1306.03.  See James L. Hooper, M.D., DEA Docket No. 11-66, Decision and Order, 76

Fed. Reg. 71371-01, 71371 (Nov. 17, 2011)("James L. Hooper")("[I]n the case of practitioners,

DEA has long and consistently interpreted the CSA as mandating the possession of authority under

state law to handle controlled substance as a fundamental condition for obtaining and maintaining

a registration."), pet. for rev. denied, Hooper v. Holder, 481 F.App'x 826 (4th Cir. 2012).  Thus,

"[w]here a practitioner's state license has been suspended for a period of certain duration, the

practitioner no longer meets the statutory definition of a practitioner."  James L. Hooper, 76 Fed.

Reg. at 71372. See 21 U.S.C. § 824(a)(3)(stating that revocation of State license is grounds for suspension or revocation of DEA registration). Under New Mexico law, a dentist prescribing controlled substances must be both licensed to practice dentistry and registered to prescribe controlled substances. See N.M. STAT. ANN. § 61-5A-5 (license required to "practice dentistry"); id. § 30-31-12 (requiring registration to prescribe controlled substances). Maintenance of a State controlled substances registration is contingent upon maintenance of a license that the practitioner's professional licensing board issues. See N.M. STAT. ANN. § 30-31-14.

The Court concludes that there is no genuine dispute of material fact whether Dr. Gardner violates the CSA by issuing prescriptions for controlled substances during a period of time when the State has revoked his State dental license and when his State controlled substances license is invalid. The undisputed evidence shows, and Dr. Gardner does not contest, that the State revokes his dental license effective July 17, 2020, and that the license remains revoked through the period relevant to this dispute. The Dental Board's November 26, 2019, revocation order revokes Dr. Gardner's dental license, DD1867, effective January 1, 2020. See Dental License Revocation Order at 5. Although a State court temporarily stays enforcement of the Dental Revocation Order, the State court lifts the stay on July 7, 2020, and the Dental Revocation Order takes effect on July 17, 2020. See Order Lifting Stay at 3; Post-Stay Enforcement Order at 3. The undisputed facts also show, and again Dr. Gardner does not contest, that Dr. Gardner's controlled substances license expires effective September 30, 2020, by its own terms. See Controlled Substances License Revocation ¶ 4, at 2. When Dr. Gardner seeks to renew his controlled substances license in January, 2021, the New Mexico Board of Pharmacy formally revokes his license, relying on the finding that Dr. Gardner's dentistry license "was revoked on July 17, 2020." Controlled Substances License Revocation ¶ 12, at 5.

Notwithstanding that Dr. Gardner does not have either a valid dental license or controlled

substances license, as he must to meet the statutory definition of practitioner under the CSA and have the ability to prescribe controlled substances, Dr. Gardner is responsible for the issuance of at least eighty controlled substances prescriptions from July 17, 2020 to February 1, 2021. See 21 U.S.C. § 802(21) ("The term 'practitioner' means a . . . dentist . . . licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he practices . . . to distribute . . . a controlled substance . . . ."); James L. Hooper, 76 Fed. Reg. at 71372 ("Where a practitioner's state license has been suspended for a period of certain duration, the practitioner no longer meets the statutory definition of a practitioner."). The United States identifies ninety-four unlawful prescriptions through the State of New Mexico's Prescription Monitoring Program ("PMP"), which is a "web-based platform maintained by the New Mexico Board of Pharmacy to provide medical practitioners, pharmacists, and other authorized users access to the controlled substances prescription records of individual patients and prescribers," that the United States alleges Dr. Gardner issues during the relevant time period. MSJ at 11. Eighty-two of the ninety-four prescriptions are Schedule II substances. See Tamayo Decl. ¶ 15, at 5. The remainder are either Schedule III or IV drugs. See Summary of Prescriptions No. 2.

The PMP indicates that Dr. Gardner issues all ninety-four prescriptions, "meaning the prescriptions were issued under his DEA registration number, which is BG 9826427." Tamayo Decl. ¶ 13, at 4. Dr. Gardner's electronic medical record, "which includes details of his dental practice and his DEA registration number," generates all but two of the ninety-four prescriptions. Tamayo Dec. ¶ 12, at 4. Further, Dr. Gardner stipulates to writing or authorizing all but fourteen of the prescriptions. See Gardner Dep. at 159:23-160:3 ("Q: Stipulate that they're all either signed by you, signed by your staff, or signed through the computer? A: Yeah. But there's some that I probably shouldn't say that because there's some that are absolutely -- Q: Why don't -- A: -- no way my signature."). Finally, Tamayo visits Dr. Gardner's practice in Albuquerque after the State

revokes his license, and witnesses Dr. Gardner continuing to practice dentistry by examining a

patient in a dental examination room.  See Tamayo Decl. ¶ 13, at 4.  The Court determines that this

evidence is sufficient to conclude that there is no genuine issue of material fact that Dr. Gardner is

responsible for eighty of the ninety-four prescriptions at issue in the case.[5]  This conclusion, paired

with the determination that there is no genuine issue of material fact that Dr. Gardner does not have

a valid dental license after July 17, 2020, allows the Court to conclude that there is no genuine

dispute of material fact that Dr. Gardner violates the CSA by issuing these eighty prescriptions.

Accordingly, the Court grants summary judgment on the issue of whether Dr. Gardner violates the

CSA.

## III.    THE COURT GRANTS SUMMARY JUDGMENT ON STATUTORY PENALTIES

[5] Dr. Gardner does successfully challenge his responsibility, however, for fourteen of the prescriptions that the United States asserts he prescribes in violation of the CSA -- Prescription Number: 489581, 60393, 491685, 2365864, 1921501, 1111437, 778882, 3718293, 2563134, 2560790, 1504717, 1547380, 2873772, and 4127714.  See MSJ at 12.  See, e.g., Gardner Depo. at 163:18-22 ("Yeah.  It does.  That's not my sign -- that's not my writing.  Looks like -- actually looks like it says Boyd on it.  (Reviewing).  What.  196 is not me.  202 is definitely not me.  I already said 213, but I'm going to say it again because I went by it.").  Despite the fact that Dr. Gardner does not directly controvert the United States asserted material fact in the MSJ attributing these prescriptions to him, as D.N.M. LR-Civ. 56.1(b) requires, the Court determines that Dr. Gardner's statements, under oath, stating that he does not sign these fourteen prescriptions, sufficiently creates a genuine issue of material fact as to Dr. Gardner's responsibility for these fourteen prescriptions.  Further, looking at the prescriptions, of the fourteen that Dr. Gardner challenges, three contain signatures that are distinctly different from Dr. Gardner's signatures on the remainder of the prescriptions, see Patient Prescription Reports at 2, 81, 122 (Prescription Numbers 489581, 2563134, 4127714), and this fact bolsters the Court's conclusion regarding Dr. Gardner's sworn testimony.  The varying signatures on these prescriptions lends credibility to Dr. Gardner's assertion that he is not responsible for these prescriptions and casts doubt on the veracity of the remaining eleven challenged prescriptions.  The Court therefore concludes that there is a genuine issue of material fact regarding Dr. Gardner's responsibility for the following prescriptions -- 489581, 60393, 491685, 2365864, 1921501, 1111437, 778882, 3718293, 2563134, 2560790, 1504717, 1547380, 2873772, 4127714.  This conclusion does not affect, however, the grant of summary judgment on the issue of liability under the CSA, because there is no genuine dispute of material fact that Dr. Gardner violates the CSA if there is no genuine dispute of material fact that Dr. Gardner is responsible for one prescription during the time period that he is unlicensed, and, here, the Court concludes that there is no genuine dispute of material fact that Dr. Gardner is responsible for eighty prescriptions during the time period that he is unlicensed.

**UNDER THE CSA FOR EIGHTY OF THE PRESCRIPTIONS, BUT FINDS A GENUINE ISSUE OF MATERIAL FACT AND DENIES SUMMARY JUDGMENT ON STATUTORY PENALTIES UNDER THE CSA FOR FOURTEEN OF THE PRESCRIPTIONS.**

The CSA provides for statutory penalties for a violation of 21 U.S.C. § 829 -- which prohibits anyone other than a practitioner from dispensing a controlled substance without a practitioner's written prescription -- stating " . . . any person who violates this section shall, with respect to any such violation, be subject to a civil penalty of not more than $25,000." 21 U.S.C. § 842(c)(1)(A). The penalties set forth in the statute are regularly adjusted to account for inflation. Effective February 12, 2024, for violations of §§ 842(a)(1) or (2) that occur after November 2, 2015, the maximum penalty per violation is $80,850.00. See 28 C.F.R. § 85.5. A civil penalty is imposed for each occasion on which a defendant commits a violation, and not for each category of violation that the defendant commits, because the statute imposes a penalty "with respect to any such violation." Advance Pharm., Inc. v. United States, 391 F.3d 377, 398-99 (2d Cir. 2004)("Advance Pharm")(applying per violation penalties for negligent recordkeeping under § 842(c)(1)(B), which is a § 842(c)(1)(A) carveout and states: "Except as provided in clause (ii), in the case of a violation of paragraph (5), (10), or (17) of subsection (a), the civil penalty shall not exceed $10,000"); United States v. Blackmon, No. 16-CV-129-JED-JFJ, 2017 WL 5565675, at * 4-5 (N.D. Okla. Nov. 19, 2017)(Dowdell, J.)(applying a per violation penalty under both § 842(c)(1)(A) and § 842(c)(1)(B)); United States v. Bradshaw, No. CIV-23-00546-JD, 2024 WL 4521387, at * 3 (W.D. Okla. Oct. 17, 2024)(Dishman, J.)(applying a per violation penalty under § 842(c)(1)(A)).

The Court concludes above that Dr. Gardner violates the CSA by prescribing controlled substances without a valid dental or controlled substances license. Dr. Gardner, therefore, is liable for civil monetary penalties under the CSA, up to $80,850.00 dollars for each violation under § 842(c)(1)(A). The United States asserts that there is no genuine dispute of material fact that Dr.

Gardner is responsible for ninety-four illegal prescriptions, resulting in ninety-four violations under § 842(a)(1) and a corresponding ninety-four penalties under § 842(c)(1)(A). The Court agrees with the United States that there is no genuine dispute of material fact that Dr. Gardner is responsible for eighty of the ninety-four prescriptions -- Dr. Gardner stipulates to his responsibility for these eighty prescriptions during his deposition, the prescriptions are issued under his DEA registration number, the prescriptions are written on his electronic medical record and bear his signature, and Tamayo witnesses Dr. Gardner continuing to practice dentistry after the State revokes his dental license. See supra pp. 26-27. The Court accordingly grants summary judgment on the issue of statutory penalties for these eighty prescriptions and assesses the correct penalty to be awarded below.

Dr. Gardner successfully challenges his responsibility, however, for fourteen of the prescriptions that the United States asserts he prescribes in violation of the CSA -- Prescription Number: 489581, 60393, 491685, 2365864, 1921501, 1111437, 778882, 3718293, 2563134, 2560790, 1504717, 1547380, 2873772, and 4127714. See supra Section II(B). See MSJ at 12. See, e.g., Gardner Depo. at 163:18-22 ("Yeah. It does. That's not my sign -- that's not my writing. Looks like -- actually looks like it says Boyd on it. (Reviewing). What. 196 is not me. 202 is definitely not me. I already said 213, but I'm going to say it again because I went by it."). The Court therefore concludes that there is a genuine issue of material fact regarding Dr. Gardner's responsibility for the following prescriptions -- 489581, 60393, 491685, 2365864, 1921501, 1111437, 778882, 3718293, 2563134, 2560790, 1504717, 1547380, 2873772, 4127714 -- and the Court denies summary judgment on the grant of civil penalties for these fourteen prescriptions.

For the remaining eighty prescriptions, the Court must assess what the appropriate penalty is for each violation. "[I]n determining monetary penalties under § 842(c), district courts have frequently considered four factors: (1) the level of defendant's culpability, (2) the public harm caused by the violations, (3) defendant's profits from the violations, and (4) defendant's ability to

pay a penalty." Advance Pharm, 391 F.3d at 399 (citing United States v. Salcedo, 2003 WL 21196843, at * 2 (E.D.N.Y. Feb.19, 2003); United States v. Poulin, 926 F.Supp. 246, 253-54 (D. Mass. 1996); United States v. Queen Vill. Pharmacy, 1990 WL 165907, at * 2 (E.D. Pa. Oct. 25, 1990); United States v. Barbacoff, 416 F.Supp. 606, 610 (D.D.C. 1976)).  These factors are not exclusive, but serve to guide the court in the exercise of its discretion in determining the appropriate penalty.  The United States asks the Court, looking to the four Advance Pharm discretionary factors, to impose a penalty of $5,000.00 per violation.  See MSJ at 17.  The Court imposes a penalty of $4,000.00 per violation instead.

Looking to the first factor, the level of defendant's culpability, the Court determines that Dr. Gardner's conduct is highly culpable and warrants a significant penalty.  Dr. Gardner continues to issue prescriptions with not one but two invalid licenses.  Further, Dr. Gardner exacerbates this misconduct by undermining the DEA's efforts to detect and stop it.  When DEA investigators visit his office on January 29, 2021, and witness Dr. Gardner practicing dentistry, he misrepresents to the investigators that his license is "fine."  Tamayo Decl. ¶ 13, at 3-4 ("I asked if his state dental license was active and valid, he responded by saying 'the last time I checked everything was fine.'").  Dr. Gardner makes this statement despite the fact that both his dental license and controlled substances licenses are invalid, a fact of which Dr. Gardner is certainly aware, given that Dr. Gardner comes before the Court on January 6, 2021, to request a Temporary Restraining Order to prevent enforcement of the dental license revocation.  See generally Gardner v. Schumacher, 547 F.Supp.3d 995 (D.N.M. 2021)(Browning, J.).  The Court concludes that Dr. Gardner's behavior in intentionally continuing to practice dentistry despite the knowledge that his licenses are invalid is highly culpable behavior, especially given that Dr. Gardner misrepresents his license status to the DEA so that he can continue practicing dentistry without the required licenses.

Looking next to the public harm that the violations cause, the Court determines that the risk

of public harm from Dr. Gardner's behavior is medium.  During his period of non-licensure, the majority of the prescriptions which Dr. Gardner issues are for Schedule II controlled substances, meaning these substances present a high potential for abuse, with use potentially leading to severe psychological or physical dependence.  See Tamayo Decl. ¶ 15, at 5; 21 U.S.C. § 812(b)(2). Prescribing these drugs without proper licensure negates the efficacy of federal and State regulatory oversight that prevents the abuse of prescription drugs. Notably, however, there is no evidence of diversion, the redirection of legally prescribed medications from their intended medical purpose to illicit use, of the prescriptions which Dr. Gardner prescribes.  Instead, it appears as if Dr. Gardner seeks to continue prescribing medications only in the course of his legitimate dental practice, albeit without the proper licensing.  This behavior does not raise as high a risk of public harm as purposeful diversion of prescription medications, and, accordingly, the Court determines that the public harm that the violations cause is medium.

Looking at the third factor, the Court concludes that Dr. Gardner does not profit directly from his CSA violations.  The United States admits that "there has been no evidence adduced to substantiate that Dr. Gardner charged his patients for the prescriptions that he rendered," although the United States notes that, "without the ability to issue prescriptions, Dr. Gardner would not have been able to perform dental procedures requiring such prescriptions."  MSJ at 15.  In the absence, however, of any evidence that Dr. Gardner profits from his CSA violations, the Court determines that this factor does not weigh in favor of a high penalty.

Finally, with respect to Dr. Gardner's ability to pay, the Court concludes that the evidence demonstrates that Dr. Gardner has assets sufficient to bear a fine as penalty.  In a divorce proceedings involving Dr. Gardner and his spouse, the court-appointed receiver and special master issue a report on April 25, 2024, cataloguing the assets of Dr. Gardner's marital estate, which are not insubstantial.  See generally Receiver/Special Master Report.  Further, Dr. Gardner introduces

no evidence of his inability to pay a statutory penalty, when the burden to establish the inability to pay the fine falls on the defendant.  See United States v. Ahuja, 736 F. App'x 20, 22 (2d Cir. 2018)(stating that the defendant "bore the burden of showing that he could not pay the fine" on appeal from a statutory penalty awarded under the CSA)(citing Motorola Credit Corp. v. Uzan, 509 F.3d 74, 84-85 (2d. Cir. 2007)(affirming civil fine imposed in part because the defendant does not show an inability to pay)).

Looking at the totality of the circumstances, the Court concludes that the United States' request for an award of a $5,000.00 penalty per violation is not unreasonable.  Dr. Gardner admits that it is not unreasonable.  See Transcript of Hearing at 59:13-16, taken January 30, 2025 (Davis)("But it's hard to argue that the amount that they are requesting to the extent that Your Honor finds the penalties are imposable it's hard to argue that that number I guess [is] unreasonable.").[6]  The Court concludes that Dr. Gardner demonstrates a high level of culpability, given his disregard for the licensing requirements and his attempt to deceive the DEA in an effort to continue practicing dentistry without the appropriate licenses.  That Dr. Gardner's actions do not present a high risk of public harm, however, paired with the fact that Dr. Gardner does not earn any direct profit from his actions, demonstrates to the Court that a slight reduction in the penalty which the United States requests is appropriate.  Accordingly, the Court awards a penalty of $4,000.00 per violation, for the eighty violations on which the Court grants summary judgment, giving a total penalty of $320,000.00.  The award of a $4,000.00 penalty for the remaining alleged fourteen prescriptions remains an issue for trial, however, because there is a genuine issue of material fact whether Dr. Gardner issues these fourteen prescriptions.

---

[6] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

IV.    **THE COURT DENIES ALL OF DR. GARDNER'S MOTIONS TO DISMISS FILED PRO SE.**

After the Court rules on the MSJ, Dr. Gardner, acting pro se, files three different motions to dismiss: (i) the First MTD; (ii) the Second MTD; and (iii) the Third MTD.  The Court denies the First MTD, because Dr. Gardner does not plead the defense of insufficient service of process in his Answer, filed December 12, 2022 (Doc. 4), and, accordingly, waives this defense.  The Court denies the Second MTD, because there is no lack of subject-matter jurisdiction or due process violations such that the judgment is void under rule 60(b)(4).  Finally, the Court denies the Third MTD, because there is subject-matter jurisdiction.

A.    **THE COURT DENIES THE FIRST MTD, BECAUSE DR. GARDNER WAIVES HIS DEFENSE TO INSUFFICIENT SERVICE OF PROCESS BY NOT PLEADING THIS DEFENSE IN HIS ANSWER.**

In the First MTD, Dr. Gardner argues that the Court should dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(5), because the "Plaintiff has failed to effectuated service of process upon the individual and the business named were NOT serve [sic] in violations under Rule 4 Fed.R.Civ.P. 4(d (1), e) (service on individuals) and Rule 4 Fed.R.Civ.P. 4(h) (service upon corporation)."  First MTD at 1 (caps and spacing in original).  Dr. Gardner makes several arguments why the United States has not correctly effected service of process.  First, Dr. Gardner argues that the United States sues him as a corporation, Dr. Gardner, DDS, and not an individual, and, accordingly, the United States' failure to follow the service rules for a corporation results in ineffective service.  See First MTD at 5, 8.  Second, Dr. Gardner argues that the service which the United States effected, leaving the summons at Dr. Gardner's residence with his wife, is improper service, because the "Defendant's wife cannot accept service of process for her husband in a federal civil case unless she is the defendant's agent, or the court allows for substituted service.  She is not the Defendants agent and the court did NOT allow substituted service."  First MTD at 5-6 (caps in

original).  Finally, Dr. Gardner argues that the Notice of Claim letter that the United States files on October 6, 2021, as attempted service of process violates his Constitutional rights, because the Notice of Claim letter:

> is not a Summons of complaint and by definition not governed by these rules. The only conclusion reasonable minds, to the reason why the US federal district attorney of NM would have to file this non-sensical letter is to maliciously extort, harass, target, intimidated and exploit the Defendant, who is not an attorney to succumb to threats of the full weight and intimidation of the government against him.  This is an ultra vires letter submitted by the US government that violates the due process rights of an individual covered in Section 1985.

First MTD at 4-5.  Further, Dr. Gardner asserts that he has not waived the requirements for service of process.  See First MTD at 6 ("The Defendant is asserting violations of Fed.R.Civ.P. 4(d)(1). (d) Waiving Service as there is no Request or Notice of waiver of service by the Defendant in writing addressed to the Plaintiff in the Record.").

Under rule 12(b) of the Federal Rules of Civil Procedure, the defendant may assert the defense of insufficient service in the answer or in a pre-answer motion.  See Federal Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 174-75 (10th Cir. 1992); Fed. R. Civ. P. 12(b), (h)(1). An individual who files an answer or a pre-answer motion without raising the defense of insufficient service, however, waives the defense and voluntarily submits to the court's jurisdiction.  See Jenkins v. City of Topeka, 135 F.3d 1274, 1275-76 (10th Cir. 1998); Federal Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d at 174-75.  Dr. Gardner, through his attorney, files an Answer on December 12, 2022, which does not raise the defense of insufficient service.  See generally Answer. Accordingly, Dr. Gardner waives the defense of insufficient service of process on December 12, 2022, and cannot now three years later, after participating in the case all the way through the summary judgment stage, raise this defense.  The Court therefore denies the First MTD.

> **B.    THE COURT DENIES THE SECOND MTD, BECAUSE THERE IS NO LACK OF SUBJECT-MATTER JURISDICTION OR DUE PROCESS VIOLATIONS SUCH THAT THE JUDGMENT IS VOID UNDER RULE**

> **60(b)(4).**

In the Second MTD, Dr. Gardner asks the Court to:

> void the judgment entered in the above case [under rule 60(b)(4)] . . . because: (1) the trial court lacked personal jurisdiction over the Defendant due to defective service of process; (2) the trial court violated the Defendant's constitutional due process rights by entering crucial financial ex parte orders without notice or opportunity to be heard.

Second MTD at 1.  The Court first notes that the Second MTD's arguments are almost entirely duplicative of the First MTD's arguments; Dr. Gardner raises the same substantive arguments in both motions, but seeks to dismiss the judgment under rule 60(b)(4) in the Second MTD as compared to a motion to dismiss under rule 12(b)(5) in the First MTD.  Nevertheless, the Court does not strike the motion.

Second, the Court notes that the Court addresses Dr. Gardner's service of process argument above, and concluding that Dr. Gardner waives this defense, does not consider it here.  Turning towards Dr. Gardner's Constitutional allegations, the Court sees no statements in the Second MTD supporting the allegation that "the trial court violated the Defendant's constitutional due process rights by entering crucial financial ex parte orders without notice or opportunity to be heard." Second MTD at 1.  Instead, Dr. Gardner reiterates his First MTD's due process arguments, which stem from his ineffective service of process claims, which relate to the Notice of Claim letter:

> The Defendant asserts that a Notice of Claim letter, is not a Summons or complaint and by definition not governed by these rules.  The only conclusion reasonable minds, to the reason why the US federal district attorney of NM would have to file this non-sensical letter is to maliciously extort, harass, target, intimidated and exploit the Defendant, who is not an attorney to succumb to threats of the full weight and intimidation of the government against him.  The Defendant asserts this is an ultra vires letter submitted by the US government that violates the due process rights of an individual covered in Section 1985.  (Ex. 1) [Notice of Claim Letter from the United States to Dr. Gardner, filed January 5, 2026 (Doc. 198)].  For these reasons, service has not been effectuated to the Defendant, and the claims should be dismissed against him, or in the alternative, the attempted service should be quashed.

Second MTD at 6.

A judgment may be void under rule 60(b)(4) if the Court enters a judgment in a manner inconsistent with due process, which means that the fundamental procedural prerequisites -- adequate notice and opportunity to be heard -- are not fully satisfied. See Orner v. Shalala, 30 F.3d 1307, 1310 (10th Cir. 1994). To the extent that Dr. Gardner argues that inadequate service interferes with his rights to adequate notice, the Court determines that the United States properly serves Dr. Gardner. The United States serves the summons upon Katherine Gardner, Dr. Gardner's wife, November 3, 2022, at Dr. Gardner's residence, and mails a copy of the summons to Dr. Gardner's last known address. See Summons in a Civil Action at 2, filed January 5, 2026 (Doc. 198). Pursuant to rule 4(e), a plaintiff may carry out service by "leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e). K. Gardner qualifies as someone of suitable age and discretion who resides at Dr. Gardner's usual place of abode, so the Court concludes that service is proper. Dr. Gardner also argues that service is improper because the United States sues him as a corporation, and not as an individual, but does not follow the service rules for a corporation. See Second MTD at 10-11. In support of this argument, Dr. Gardner points to his corporate filing with the State of New Mexico under the title William C. Gardner, DDS P.A. See Second MTD at 10; Business Search, filed January 5, 2026 (Doc. 198). The United States, however, files the lawsuit against William C. Gardner, DDS, and not against William C. Gardner, DDS P.A. The "P.A." in the title stands for Professional Association and is what designates the title as the title of an organization. By purposefully omitting the "P.A" from the title, the United States makes clear that it sues Dr. Gardner in his individual capacity, and does not sue Dr. Gardner's business. Accordingly, the Court concludes that the United States carries out service properly by following the procedure for serving an individual instead of serving a corporation.

Finally, beyond any due process allegations that relate to service of process, the Court

determines that the remaining due process allegations in the Second MTD -- "maliciously extort, harass, target, intimidated and exploit the Defendant, who is not an attorney to succumb to threats of the full weight and intimidation of the government against him" -- do not affect either Dr. Gardner's notice or opportunity to be heard in this case, and, accordingly, do not rise to the level of a due process violation which would make a judgment void under rule 60(b)(4).  Second MTD at 6.  As a result, the Court determines that there is no sound basis upon which to void the judgment in this case under rule 60(b)(4) and denies the Second MTD.

> **C.    THE COURT DENIES THE THIRD MTD, BECAUSE THERE IS SUBJECT-MATTER JURISDICTION.**

In the Third MTD, Dr. Gardner asks the Court, pursuant to rules 12(b)(1) and 12(b)(3), to dismiss the case for lack of subject-matter jurisdiction.  See Third MTD at 1.  Dr. Gardner argues that "the complaint fails to allege the operative CSA violation -- prescribing without a legitimate medical purpose under 21 C.F.R. § 1306.04 -- [and therefore] fails to present a cognizable federal question."  Third MTD at 1-2.  Dr. Gardner argues that the United States' premise that the Dental Board deprives him of federal authority to prescribe controlled substances under the CSA is legally false for three reasons: (i) "the federal DEA registration -- the operative federal credential -- is a separate legal system governed exclusively by 21 U.S.C. § 823 and revocable only by the DEA through its own mandatory administrative process, which was never initiated here;" (ii) "six independent, federally-regulated pharmacies verified Dr. Gardner's DEA registration as active and valid at the time of every one of the 94 prescriptions at issue, directly refuting the government's theory that he lacked federal authorization;" and (iii) "the Supreme Court's decision in Gonzalez v. Oregon, 546 U.S. 243 (2006), forecloses the use of the CSA as a vehicle to adjudicate disputed state professional licensing proceedings."  Third MTD at 1-2.

Federal-question jurisdiction exists when "a federal question is presented on the face of the

plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)(citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)).  Here, the United States properly pleads a violation of the CSA on the face of its complaint: Dr. Gardner continues to issue prescriptions after the State revokes his New Mexico dental license and controlled substances licenses, meaning that he prescribes these prescriptions in violation of the CSA, because he no longer meets the definition of prescriber as the CSA requires.  This allegation is sufficient to give the Court subject-matter jurisdiction; what Dr. Gardner seeks to do in the Third MTD is to re-litigate the case's merits, which the Court already decides in the MSJ portion of the opinion above.

Dr. Gardner also argues that the United States does not allege a CSA violation, because the United States does not identify a controlled substance prescription that he issues without a legitimate medical purpose or that he issues the prescription outside the usual course of professional practice.  See Third MTD at 10.  While Dr. Gardner is correct that the United States does not plead the CSA violation by proof of absence of legitimate medical purpose or outside the usual course of professional practice, Dr. Gardner is incorrect that these two ways are the only way in which the United States can properly plead a CSA violation.  The CSA also requires that a DEA-registered practitioner be the one to prescribe controlled substances, and a practitioner prescribing controlled substances must be "authorized to prescribe controlled substances by the jurisdiction in which he or she is licensed to practice."  21 C.F.R. § 1306.03.  See 21 U.S.C. § 829.  By pleading that Dr. Gardner does not have valid State licenses, the United States pleads that he does not meet the definition of practitioner as the CSA requires, and, accordingly, that he prescribes controlled substances in violation of the CSA.  The Court therefore determines that the United States presents a federal question, meaning that the Court has subject-matter jurisdiction over this case, and, accordingly, denies Dr. Gardner's Third MTD.

**IT IS ORDERED** that: (i) the requests in the Plaintiff's Motion for Summary Judgment

and Memorandum in Support, filed December 23, 2024 (Doc. 165), are granted in part and denied in part; (ii) the Plaintiff's [sic] Motion to Dismiss for Improper/Lack of Service and Lack of Jurisdiction, filed September 9, 2025 (Doc. 195), is denied; (iii) the Defendant's Motion to Dismiss Federal Rule of Civil Procedure (FRCP) 60(b)(4), filed January 5, 2025 (Doc. 198), is denied; (iv) the Plaintiff [sic] Motion for Leave by the Court to Use Pacer System, filed January 5, 2026 (Doc. 199)("Motion for Leave"), is granted; (v) the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Relief from Void Judgment Pursuant to Fed. R. Civ. P. 60(b)(4), filed March 5, 2026 (Doc. 214), is denied; (vi) the Defendant must pay $4,000.00 in penalties for eighty of his unlawful prescriptions; and (vii) judgment is entered for the Plaintiff and against the Defendant in the amount of $320,000.00.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and parties:*

Todd Blanche
  Acting United States Attorney General
Ryan Ellison
  First Assistant United States Attorney
Roberto D. Ortega
Ruth Fuess Keegan
Sean M. Cunniff
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff/Counter-defendant*

Bryan J. Davis
Byran J. Davis, Attorney at Law, LLC
Albuquerque, New Mexico

    *Attorney for the Defendant*

William C. Gardner, DDS
Albuquerque, New Mexico

    *Defendant/Counter-claimant pro se*